TRI-STATE CASUALTY INS. CO. et al.
v. LA FON.

No. 34269.   Oct. 9, 1951.

Rehearing Denied Nov. 6, 1951.

*237 P. 2d 124.*

Butler & Rinehart, Oklahoma City, for plaintiffs in error.

Harry C. Kirkendall, Enid, for defendant in error.

O'NEAL, J. This is an appeal from a decree of the district court of Garfield county reforming a workmen's compensation insurance policy.

The Independent School District of Covington, in Garfield county, known and designated as Independent School District No. 77 in the town of Covington, was the owner of a building located in said town of Covington, which building had for many years been used as a high school building, or a building in which high school has been conducted. Said building fell into a state of disrepair to the extent that it was unfit for such use. It stood unused for about two years. The school district had a heavy bonded indebtedness and was unable to raise the money necessary to repair said building.

Sometime prior to July 20, 1946, the citizens of the community of Covington organized a community club for the purpose of raising funds by subscription to pay the cost of repairing said high school building. Said club was an unincorporated and nonprofit association. The club appointed a finance committee for the purpose of raising the necessary money to make the repairs. The finance committee collected a fund amounting to about $30,000 and deposited the same in the First State Bank of Covington in the name of "School District 77, Memorial Building Fund." The Community Club apparently decided to repair the high school building under its own management and control. A building committee was appointed for the purpose of carrying on the work. An architect was employed to draw the plans and specifications. The building committee employed the workers and paid them by checks drawn upon said fund.

Shortly after the work got under way, certain members of the Community Club, including at least two members of the building committee, became concerned about their workers being protected under the Workmen's Compensation Law. To that end they consulted with Mr. G. A. Tucker, who was the local agent for the Tri-State Casualty Insurance Company. In this connection it may be noted that G. A. Tucker was also the manager of the First State Bank of Covington, and was also a member of the Community Club, and was, or had been, a member of the finance committee and assisted in raising said funds. The question arose as to whether the workmen's compensation policy should be taken out in the name of School District No. 77, or in the name of the Community Club. Mr. Tucker advised the committee that he was uncertain about the matter but that he would find out. Thereafter Mr. Tucker went to the office of Chas. P. Cansler, district agent of said insurance company in Enid, and explained the situation to him. Just what Mr. Cansler advised Mr. Tucker is not clear, but the result was that there in Enid, Oklahoma, G. A. Tucker signed an application on behalf of the board of education of School District No. 77, address, Covington, Oklahoma. The application also appears to have been signed by E. M. Burk, Agent, Location of Agency; Enid, Oklahoma.

July 20, 1946, the policy was written by Tri-State Casualty Insurance Company in the name of Board of Education of School District No. 77, P. O. Address: Covington, Oklahoma. The

premium, $399, was paid by check drawn on said Community Fund. The policy was apparently left with G. A. Tucker for safekeeping. He placed the same in a vault in his place of business where it remained until shortly before the hearing in this case. On December 16, 1946, the plaintiff herein, Sherman LaFon, while employed on said repair job as a carpenter, received a serious accidental injury by a nail which struck him in the eye, resulting in the loss of his eye. December 26, 1946, said Sherman LaFon filed his claim for compensation with the State Industrial Commission against "The Board of Education School District No. 77, Covington, Oklahoma, and the Tri-State Casualty Insurance Company, its insurance carrier," which claim is still pending before the State Industrial Commission. Apparently, the question arose as to whether there could be liability against the Board of Education of said school district under the policy as written. On June 19, 1948, the present action was commenced by LaFon in the district court of Garfield county against: "Tri-State Casualty Insurance Company, a corporation, the Board of Education of Independent School District Number 77 of the Town of Covington, Garfield County, State of Oklahoma, Covington Community Club, an association, Chas. P. Cansler, and G. A. Tucker," praying that said insurance policy be reformed by inserting the name of Covington Community Club, an association, in place and instead of Board of Education of School District No. 77, so as to speak the truth as to the name of the party insured.

The case was tried to the court without a jury, and at the close of the evidence, disclosing a state of facts substantially as above set forth, the court made a finding that the Covington Community Club should have been made the party insured. Thereupon the court rendered judgment ordering reformation of the policy, as prayed for, and that the Covington Community Club, an association, be inserted in said compensation policy in place and instead of the Board of Education of Independent School District No. 77, Town of Covington, Garfield county, Oklahoma.

From said decree, the defendants, Tri-State Casualty Insurance Company and Chas. P. Cansler, appeal.

Some twelve assignments of alleged error are presented under two propositions:

(1) The court has no jurisdiction over the subject matter of this action.

(2) The evidence is insufficient to support the findings and judgment of the court.

Under the first proposition defendants contend that the State Industrial Commission has exclusive jurisdiction over all controversies raised in this case, and that this includes power and jurisdiction to determine the issues in this case as to whether defendant Tri-State Casualty Insurance Company was, in fact, the insurance carrier for the Covington Community Club, and whether the policy should be reformed so as to make the Covington Community Club the insured.

To begin with, we have two well established rules with reference to reformation of instruments. One is that reformation is not an incident to an action at law, but can be granted only in equity. United States v. Milliken Imprinting Co., 50 L. Ed. 980. Therein it is said:

"The government objects at the outset that the court of claims has no jurisdiction in equity, and that, although the petitioner's demand is for money under a contract as it should have been drawn, yet, in this suit, that demand is incident to the reformation asked, which certainly is true. Reformation is not an incident to an action at law, but can be granted only in equity."

The second rule is:

"Courts which do not possess general equity jurisdiction are limited in their powers to give equitable relief to the

authority effectively vested in them by the Legislature so that reformation of instruments cannot be decreed by such a court when the power has not been effectively conferred upon it, even though it has been given power to grant other special forms of equitable relief. Reformation may, however, be granted by courts having limited equitable jurisdiction which is specially extended to include the power to reform instruments." 53 C. J. 991.

The Constitution of this state, Art. 7, §10, provides that:

"The District Courts shall have original jurisdiction in all cases, civil and criminal, except where exclusive jurisdiction is by this Constitution, or by law, conferred on some other court, and such appellate jurisdiction as may be provided in this Constitution, or by law. The District Courts, or any judge thereof, shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, prohibition, and other writs, remedial or otherwise, necessary or proper to carry into effect their orders, judgments, or decrees. The District Courts shall also have the power of naturalization in accordance with the laws of the United States."

Thereunder, district courts have jurisdiction in the matter of reformation of a workmen's compensation insurance policy, unless exclusive jurisdiction is conferred upon some other court or tribunal. The question then arises: Was exclusive jurisdiction conferred upon the State Industrial Commission?

This court has many times held that the State Industrial Commission is a tribunal of limited jurisdiction. We must then look to the statute to determine whether authority is effectively vested in the State Industrial Commission to reform workmen's compensation insurance policies. We find no specific grant of such authority.

"In construing grants of power to inferior courts of limited jurisdiction, or courts not proceeding according to the course of the common law, nothing is to be held as granted by implication which is not necessary to the full exercise of the powers expressly granted, and such courts are confined strictly within the limits of the powers granted." 21 C.J.S. Courts, §16, p. 33.

Defendants cite and rely largely upon Employers Liability Assurance Corporation v. Matlock, 151 Kan. 293, 98 P. 2d 456. Therein the claimant had been allowed an award of $1,360 under the Kansas Workmen's Compensation Law. The insurance carrier filed a suit in the district court to relieve it from paying the compensation. In its petition it sought: (1) The cancellation of the policy on the ground of fraud: (2) the reformation of the policy on the ground of mutual mistake, and (3) injunction against further proceedings. Thus the Kansas case presented a similar situation, with the difference that in the Kansas case it was the insurance carrier that went to the district court seeking equitable relief, while in the instant case it was the employee (beneficiary) who went to the district court for relief.

In the Kansas case it was held that the district court had no jurisdiction and that the Industrial Commission had exclusive jurisdiction. Therein it was held:

"The remedy under the compensation act is complete with a procedure distinctly its own and that procedure was intended to be and is substantial, complete and exclusive. All issues pertaining to liability of the employer or insurance carrier for compensation are required to be presented, heard and determined in accordance with the procedure provided by the act, and the district court is without jurisdiction to entertain an action by the insurer against the employer and employee, after the injury of the latter, to cancel or reform the insurance policy, until the remedies provided by that act have been exhausted."

Later, a similar question arose in Provenzano v. Long (Nev.) 183 P. 2d 639, and the Supreme Court of Nevada declined to follow the Kansas case, and held that the district court had jurisdiction to make determination as against contention that Industrial Commission had exclusive jurisdiction. The Nevada

Supreme Court pointed out that the Kansas case, Employers Liability Assurance Co. v. Matlock, supra, was based almost entirely on New York, California, and Kansas cases therein cited. It is then pointed out that both California and New York have special constitutional provisions granting such authority and authorizing such procedure.

The Supreme Court of Nevada also pointed out that in Michigan Mutual Liability Co. v. Baker, 295 Mich. 237, 294 N.W. 168, the Supreme Court of Michigan held that the proper place to determine the question of the cancellation of the insurance certificate on the ground of fraud, or mistake, was in a court of equity, and that the commission was an administrative tribunal only, and not a court possessing general equitable and legal powers.

The Nevada Supreme Court also cites Kelley v. Howard, 233 Mo. App. 474, 123 S.W. 2d 584, wherein the court agreed with the contention that the commission was an administrative agency without judicial power in the constitutional sense and had no power initiatively to expound any principle of law, or equity. The Nevada court also cites Kelley v. Minneapolis, St. P. & S. S. M. Ry. Co., 206 Wis. 568, 240 N.W. 141, wherein it was said:

"We find no sanction in the law for the contention herein made that the commission may exercise such purely judicial powers."

In Red Rover Copper Co. v. Industrial Commission, 58 Ariz. 203, 118 P. 2d 1102, Arizona adopted and followed the Kansas theory. But that was done pursuant to a constitutional amendment of the Constitution of Arizona, art. 18, §§4, 5, and 7.

It thus appears that aside from New York, California and Arizona, each of which has constitutional authority, Kansas stands almost alone on the question.

We find no constitutional provision and no statutory provision conferring power upon the State Industrial Commission to exercise equitable power to reform a state industrial insurance policy. That power is with the district court.

Defendants also contend that the evidence was insufficient to support the finding and judgment of the trial court. The contention is without merit. The building committee of Covington Community Club was without experience in the matter and wanted protection of its workmen under the Workmen's Compensation Law. The committee was uncertain as to whether the policy should be written in the name of Independent School District No. 77, or in the name of the Covington Community Club. For a solution of the question, the committee sought the advice of Mr. Tucker, the local agent of the insurance company. He advised the committee that he was uncertain about the matter but would find out. Accordingly, he went to the district agent, or representative, of the company, where it was apparently decided that the policy should be written in the name of Independent School District No. 77.

The district agent made an erroneous decision. This court had, in 1932, some fourteen years prior to that time, in Ponca City Board of Education v. Beasley, 157 Okla. 262, 11 P. 2d 466, held that:

"A school district is not an employer within the meaning of the provisions of the Workmen's Compensation Act of Oklahoma."

It thus appears that the policy in question was, without the fault of the Covington Community Club, issued in the name of the school district which could not be an employer within the meaning of the Workmen's Compensation Act of Oklahoma.

Under the facts shown by the evidence, plaintiff is entitled to have the policy reformed.

Affirmed.

ARNOLD, C.J., HALLEY, V.C.J., and WELCH, CORN, GIBSON, JOHNSON, and BINGAMAN, JJ., concur.