Lendell CAIN, Employee (Plaintiff), Respondent,

v.

ROBINSON LUMBER COMPANY, Employer (Defendant),

Highway Casualty Company, Insurer (Defendant), Appellant.

No. 28980.

St. Louis Court of Appeals. Missouri.

Dec. 21, 1954.

Rehearing Denied Jan. 14, 1955.

742

Luke, Cunliff & Wilson, St. Louis, Dearing & Matthes, Hillsboro, of counsel, for appellant.

Samuel Richeson, Potosi, for respondent employer.

WOLFE, Commissioner.

This is a claim for compensation against O. A. Robinson and R. B. Robinson, doing business as Robinson Lumber Company, and their insurer, Highway Casualty Company. It was first heard before a referee for the Division of Workmen's Compensation, and, upon application for review, before the Commission. The Commission found that the claimant suffered a compensable injury and directed that the insurer pay to him $20 per week for 27 weeks, and further found that the employers and insurer were liable "for whatever medical, surgical and hospital expenses" the employee had incurred. Upon appeal by the insurer the circuit court affirmed the award and the insurer again appeals.

The claimant suffered an injury to his right index finger on February 21, 1952, when his hand was caught between two logs in his employers' lumber yard. The accident occurred during the course of, and arose out of, the claimant's employment. Upon this there is no dispute, but the insurer claims that its policy covering the liability of the employers had been canceled prior to the accidental injury and that by reason of this the Commission erred in finding that it was liable for the award.

The evidence as it relates to the insurance is as follows. A standard Workmen's Compensation and Employers' Liability Policy

was issued by the Highway Casualty Company effective as of September 13, 1951, to O. A. Robinson and R. B. Robinson, doing business as Robinson Bros. Lumber Co. The policy was for one year. It provided that the premiums were based upon ·the entire remuneration paid to the employees of the insured. The amount of the premium was to be paid in quarterly installments and was. subject to adjustment to be ·made quarterly. The initial premium paid was an estimated advance subject to the. quarterly adjustment mentioned. The policy .further provided that the first report of wages paid was to become due on December 13, 1951, and that the quarterly premium then computed to be due was to be paid immediately.

The policy also provided:

"This policy may be canceled at any · time by either of the parties upon written notice to the other party stating when, not less than ten days thereafter, cancelation shall be effective. The effective date of the cancelation shall then be the end of the Policy Period. * * * Notice of cancelation shall be served upon this Employer as the law requires, but, if no different requirement, notice mailed to the address of this Employer herein given shall be a sufficient notice, and the check of the Company, similarly mailed, a sufficient tender of any unearned premium."

The employers paid an initial premium of $325 but made no report· of the wages paid over the first quarterly period. The insurer mailed to them on December 1, 1951, a form called Audit Adjustment wherein· the employers were supposed to insert the amount of their payroll and return the form to the insurer for the computation of the second. quarterly premium. This was· not returned to the insurer so a warning notice was .mailed to the employers stating that a notice of cancellation would be sent unless the Audit Adjustment form was returned. A carbon copy of the warning notice dated December 20, 1952, was addressed to Potosi, Michigan, instead of Potosi, Missouri, which

was the employers' place of business. On January 3, 1952, the insurer deposited in the mail at its home office in Chicago. a cancellation notice informing the insured that the policy was canceled effective January .14, 1952, for nonpayment of premium. A carbon copy of the notice properly addressed to the insured was put in evidence together with a post office receipt for a letter from the Highway Casualty Company to' Robinson Bros. Lumber Company. The receipt bore the same date as the carbon copy of the cancellation notice and an employee of the insurer testified that such receipts were only taken by them for mail containing notice of cancellation.

On the same day that this notice was mailed to the employers the insurer also directed a letter to the Division of Workmen's Compensation of the Department of Labor and Industrial Relations of Missouri, stating that the insurer had canceled its policy with the Robinson Bros. Lumber Company. This was received by the Commission and was put in evidence.

One of the employers testified that they had received no notice of cancellation and did not know that there had been any cancellation of the policy until March 7, 1952. It was agreed that the postmaster of Potosi, if called, would testify that no registered mail had been received for the Robinson Bros. Lumber Company in January of 1952.

On January 25, 1952, the insurer's agent sent a telegram to the insurer requesting reinstatement of the policy but no action was taken on the request. A computation of the premium due up to the effective date of the cancellation notice showed a balance of $22.79 owing to the insurer.

The Commission found that the liability for the injury was insured by the Highway Casualty Company and that the Highway Casualty Company had failed to notify the employers of the cancellation as required by the terms of the policy and that the policy consequently was in force on February 21, 1952, when the claimant was injured.

The appellant contends that the award and finding is contrary to all of the evidence

and the undisputed facts. To this contention the employers first counter with the assertion that the Commission was without jurisdiction to entertain the defense that the policy had been canceled.

We held in Liechty v. Kansas City Bridge Co., Mo.App., 155 S.W.2d 297, that the Commission had those powers which are necessary to the proper discharge of its duties and that it could determine purely legal questions such as whether the employee was covered by a contract of insurance. Thus it would be essential to the fixing of liability to determine whether or not a contract of insurance had been canceled prior to the injury.

The respondent relies upon the cases of Kelly v. Howard, 233 Mo.App. 474, 123 S.W.2d 584; Brollier v. Van Alstine, 236 Mo.App. 1233, 163 S.W.2d 109, and Allen v. Raftery, 237 Mo.App. 542, 174 S.W.2d 345. None of these cases, however, has to do with cancellation of a policy in accordance with its terms.

[1] Our Liechty case, supra, was transferred to the Supreme Court on the assumption that it was in conflict with the case of Kelly v. Howard, but in Liechty v. Kansas City Bridge Co., Mo.Sup., 162 S.W.2d 275, the Supreme Court held that there was no conflict and under that ruling the Commission may decide whether or not the policy of insurance has been canceled by virtue of the terms and express conditions of the contract. To hold otherwise would invalidate any cancellation provision for which the parties may have contracted unless an independent proceeding was first brought in court to pass upon the matter, and, as we pointed out in the Liechty case, no such piecemeal practice is within the contemplation of the act.

■ Since the Commission had jurisdiction to determine whether or not the policy had been canceled, we must consider appellant's contention that the finding is contrary to the evidence. The rule as to appellate review of the finding of the Commission obliges us to determine whether such finding could reasonably have been made

from a consideration of all the competent evidence, and the award should be allowed to stand unless it is clearly contrary to the overwhelming weight of the evidence. Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55.

■ In applying this standard of appellate review, it should be borne in mind that "the Commission may not arbitrarily disregard and ignore competent, substantial and undisputed evidence of witnesses who are not shown by the record to have been impeached, and the Commission may not base their finding upon conjecture or their own mere personal opinion unsupported by sufficient competent evidence". Sanderson v. Producers Commission Ass'n, 360 Mo. 571, 229 S.W.2d 563, loc. cit. 567; Scott v. Wheelock Bros., 357 Mo. 480, 209 S.W.2d 149.

The terms of this policy as they relate to cancellation are clear. Either party to the contract may cancel the policy at any time it desires to do so upon notice of cancellation to be effective not less than ten days after the date of the notice. It provides that notice mailed to the address of the employer is sufficient. The evidence that a notice was mailed to the employers was uncontradicted and unimpeached in any way. There was a post office receipt for the notice which could not have been obtained without the mailing of it and the evidence is conclusive as to the fact that the notice required was mailed. No registered mail addressed to the employers was received at the Potosi post office, but this is without significance, for the notice was not sent by registered mail and there was no requirement that it should be.

■ It is true that the employers stated that they never received the notice of cancellation, but where the parties have agreed that the mailing of the notice shall be sufficient, the fact that it was not received by the party to whom it was properly addressed will not render the mailed notice ineffective. We are not dealing here with

any presumption of delivery upon a showing that a letter had been mailed and the rebutting of such presumption by a showing of nondelivery. The contract does not require delivery but only the mailing of the notice, and when that was done its terms had been met. Neither the Commission nor the court can enlarge upon the clear intendment of the language chosen by the contracting parties. Schott v. Continental Auto Ins. Underwriters, 326 Mo. 92, 31 S.W.2d 7; Dent v. Monarch Life Ins. Co., 231 Mo.App. 283, 98 S.W.2d 123; McCoy v. Guarantee Trust Life Ins. Co., Mo.App., 240 S.W.2d 172.

It should be noted that we are not concerned with any rules relating to the refunding of the unearned portion of a premium, for, as stated, the premium paid by the insured was not sufficient to cover the period up to the date of the cancellation of the policy.

From the foregoing we must conclude that the Commission erred in holding the Highway Casualty Company liable.

There is a further finding to which both the appellant and the employers level objections and that is the finding that they "are liable for whatever medical, surgical and hospital expenses employee has incurred as a result of this accident." There was no evidence that he had incurred any expenses. He had paid no doctor bills and was treated only by a Dr. Lake to whom he had been taken by his employers. The finding is not only unsupported by any evidence but it is for no determinable amount and is consequently unenforceable. Moore v. International Shoe Co., Mo.App., 205 S.W.2d 930.

For the reasons stated, it is the recommendation of the Commissioner that the judgment of the circuit court affirming the award of the Commission be reversed and that the cause be remanded to the circuit court with directions to set aside its judgment and to enter a new judgment in conformity herewith and to remand the cause to the Commission to enter a final award in conformity with the new judgment.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court affirming the award of the Commission is accordingly reversed and the cause remanded with directions in accordance with the recommendation of the Commissioner.

RUDDY and BENNICK, JJ., and McMULLAN, Special Judge, concur.